**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

TRACY PAINTER,                          )
                                        )
                Petitioner,             )      Civil Action No. 05-588
                                        )
        v.                              )      Judge Joy Flowers Conti
                                        )      Magistrate Judge Lisa Pupo Lenihan
SUPERINTENDENT WILSON, *et al.*,        )
                                        )
                Respondents.            )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be denied and that

a certificate of appealability be denied.

### II.    REPORT

Petitioner Tracy Painter is a state prisoner incarcerated at the State Correctional

Institution located in Fayette, Pennsylvania.  Currently pending before this court is his

Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).

Therein, he raises the following claims:

> (1)    The evidence was insufficient to support a verdict of guilt on the charges of stalking, harassment, and endangering the welfare of children;
>
> (2)    The evidence was insufficient to support a verdict of guilt on the charges of simple assault and terroristic threats;
>
> (3)    The sentence imposed by the trial court was excessive;
>
> (4)    The trial court erred in denying the pretrial motion to sever the cases;

1

(5)     He received ineffective assistance of counsel because his trial
        attorney:

    (a)     failed to object to "numerous evidence being admitted in
        court";

    (b)     failed to object to the jury trial proceeding in Painter's
        absence and failed to ask for a continuance;

    (c)     failed to present a mental-health defense; and,

(6)     He "was obstructed from a meaningful appeal" on the denial of his
        first and second state post-conviction petitions.

## A.     Relevant Factual and Procedural History

Painter was represented at trial and on direct appeal by Assistant Public Defender

Deborah L. Jackson, Esquire.  The Superior Court of Pennsylvania summarized the

evidence presented at his trial as follows:

> Kathleen Painter, wife of [Painter] and the mother of their three children,
> secured a Protection From Abuse Order (PFA) against Mr. Painter following
> an assault which occurred outside Mrs. Painter's workplace.[ ]   The PFA
> required Mr. Painter to stay at least 100 yards away from Mrs. Painter's
> residence and workplace, and at least 10 yards away from Mrs. Painter
> herself.  In the early morning of June 26, 1998, one day after [Painter] was
> released from prison for the assault, he showed up at his estranged wife's
> house demanding to see their children.  Mrs. Painter forbade Mr. Painter's
> entry and notified the police who, in turn, warned Mr. Painter to remain the
> required 100 yards away from his wife's home and place of employment.
> Later the same day, Mrs. Painter met her husband at the North Huntingdon
> Police Department, a designated court-ordered location, to give him
> temporary custody of the children.  Painter drove off with the children while
> Mrs. Painter proceeded to a laundromat, which was located next to her work
> place. While Mrs. Painter stood outside the laundromat talking to her parents,
> Mr. Painter slowly drove by; he drove by an additional two times, stopping for
> several seconds to stare at her.   Scared and nervous, Mrs. Painter
> immediately called the police department.  Patrolman Grynkewicz described
> Mrs. Painter as very upset and nervous.  Later the same afternoon, Patrolman
> Grynkewicz observed Mr. Painter walking directly in front of Mrs. Painter's
> work place.

A few months later, in November, Mrs. Painter was told by one of her sons that Mr. Painter urged him to "tell mommy she's going to get her wish, I'm going to blow my f-----g head off, and I'm going to blow hers off, too."  On the evening of November 13th, Mr. Painter arrived at Mrs. Painter's home and began ringing the bell, knocking on the door, and trying to get the children to come to a window.  He was ignored and, minutes later, broke into the home and began chasing Mrs. Painter around the house wielding a utility knife and claiming it was "her night to die."  Mr. Painter cut Mrs. Painter multiple times in front of the children; he also severed the telephone line to prevent his sons from calling for help.  Mr. Painter eventually forced his family into his wife's car and ordered her, at knifepoint, to drive to a remote location in the country.  Mrs. Painter, still bleeding, talked her husband into stopping at a filling station for gas.  There, she was able to extricate herself and her children from the car and, after a struggle with her husband, was able to get help.

Mr. Painter was charged with burglary, aggravated assault, criminal trespass, unlawful restraint, endangering the welfare of children, simple assault, recklessly endangering another person, criminal mischief, harassment/stalking, and kidnapping.  In a separate criminal complaint, Mr. Painter was charged with criminal attempt to commit criminal homicide, terroristic threats and recklessly endangering another person.  The charges were consolidated and Mr. Painter was charged before a jury, the Honorable Richard E. McCormick, Jr., presiding.  Mr. Painter was acquitted on the charge of criminal attempt to commit criminal homicide and was convicted of all other charges.  He was sentenced to a term of incarceration of 9 ½ to 19 years.

(State Court Record ("SCR")[1] at 146a-148a).

Painter, through his counsel, appealed his judgment of sentence to the Superior Court of Pennsylvania.  In his appeal, he raised the same claims identified above as Claims 1, 2, and 3.  On March 20, 2000, the Superior Court denied each claim on the merits and affirmed the judgment of sentence.  (SCR at 146a-157a).  Painter filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania, which was denied on October 23, 2000.  (SCR at 190a).  He did not file a writ of *certiorari* with the United States Supreme Court.  Accordingly, his judgment of sentence became final on or

---

[1] The SCR is contained at Docket No. 17.

about January 22, 2001, the date on which the ninety-day period to seek *certiorari* expired.  United States Supreme Court Rule 13; <u>see</u> <u>also</u> <u>Swartz v. Meyers</u>, 204 F.3d 417, 419 (3d Cir. 2000) (a state prisoner's judgment of sentence becomes final at the conclusion of direct review or the expiration of time for seeking such review).

On August 7, 2001, Painter filed in state court a timely, *pro se*, petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT. § 9541 *et seq.*  Judge McCormick appointed Ronald Valasek, Esquire, to represent him.  Counsel filed an amended PCRA petition and raised the same claims listed above as Claims 4, 5(a) and 5(b).  On November 26, 2003, Judge McCormick denied the amended PCRA petition.  (SCR at 204a-207a).  Painter did not appeal that decision.

Painter contends that he did not learn that Judge McCormick denied his PCRA petition until May 12, 2004.  (Doc. 1 ¶ 12(e)).  On or around August 5, 2004, he filed a second PCRA petition requesting that his right to appeal the first PCRA petition be reinstated *nunc pro tunc*.  (<u>See</u> SCR at 211a).  Judge McCormick appointed Sharon L. Wigle, Esquire, to represent him.  Attorney Wigle subsequently filed a "no-merit" letter requesting leave to withdraw and asserting that the second PCRA petition was untimely and that the court could not reinstate Painter's appeal rights *nunc pro tunc*.

Judge McCormick granted Attorney Wigle's request to withdraw and, in February 2005, dismissed the second petition as untimely under the PCRA's statute of limitations.  (SCR at 211a-213a; 219a).  Judge McCormick further noted the court had no jurisdiction to reinstate Painter's appeal rights with regard to his first PCRA petition.  (SCR at 212a

4

(citing Commonwealth v. Robinson, 837 A.2d 1157 (Pa. 2003)).[2]

Painter appealed the denial of his second PCRA petition to the Superior Court. He contended that Attorney Valasek provided him with ineffective assistance of counsel because he failed to inform him that his first PCRA petition had been denied on November 23, 2003.[3]  (See SCR at 211a-212a).  He also claimed that his trial attorney provided him with ineffective assistance for failing to raise a mental-health defense (the same claim that is identified above as Claim 5(c)).

On December 28, 2005, the Superior Court held that the second PCRA petition was untimely and affirmed the denial of PCRA relief.  (SCR at 216a–222a).  It noted that

_____

[2]  In Robinson, the petitioner had, through counsel, appealed the denial of his first, timely filed, PCRA petition to the Superior Court of Pennsylvania.  Id. at 1159.  The Superior Court subsequently dismissed without prejudice because counsel failed to file a brief.  Id.  The petitioner then filed a second PCRA petition, seeking, among other things, to have his PCRA appeal rights with regard to his first petition reinstated.  Id.  The Common Pleas Court reinstated the petitioner's appellate rights based on a finding that his first PCRA counsel was ineffective in failing to file a brief.  Id.  The Superior Court affirmed and rejected the Commonwealth's argument that the state courts had no jurisdiction to reinstate appellate rights because the second PCRA petition, which sought this relief, was untimely.  Id.  The Supreme Court of Pennsylvania reversed the Superior Court and, in so doing, admonished the court for "tinkering" with the jurisdictional mandate of the PCRA.  Id. at 1162.  It noted that, under Pennsylvania law, the PCRA provides the exclusive vehicle for obtaining collateral relief on claims that are cognizable under the statute, including claims for nunc pro tunc reinstatement of appellate rights.  Id. at 1160-63.  It further noted the absolute jurisdictional nature of the time-bar in the PCRA and emphasized that it has rejected all attempts by petitioners to avoid the effects of the statute's limitations period via the application of an equitable exception to the time-bar.  Id.

[3]  Painter also alleged that Attorney Wigle provided him with ineffective assistance because she failed to notify him that Judge McCormick dismissed the second PCRA petition.  (See SCR at 211a-12a).  However, Judge McCormick had acknowledged that Painter initially had not been notified that his second PCRA petition had been denied, and, on May 26, 2005, he reinstated Painter's right to appeal the dismissal of the second PCRA petition, thereby correcting the error and eliminating any harm Painter may have incurred from it.  (See SCR at 208a; 212a).

under Pennsylvania law, a petition for relief under the PCRA, including a second petition, must be filed within one year of the date the petitioner's judgment of sentence becomes final.  (SCR at 220a).  It further noted that the statute provides that a petitioner may raise a claim in a PCRA petition filed outside the one-year limitations date if, in relevant part: (1) the failure to raise the claim previously was the result of interference by government officials, or (2) if the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.  (SCR at 220a (citing 42 PA.CONS.STAT. § 9545(b)(i) and (ii)).  A petition invoking one of these statutory exceptions to the limitations period must "be filed within 60 days of the date the claim could have been presented."  (SCR at 221a (citing 42 PA.CONS.STAT. § 9545(b)(3)).  Because Painter filed his second PCRA petition on August 12, 2004 – 152 days after he allegedly learned that his first PCRA petition had been denied – it was filed well outside the 60 day time period for invoking an exception to the one-year limitation period.  (See SCR at 212a; 220a-221a).

At the same time that Painter was pursuing an appeal of the denial of his second PCRA petition in the Superior Court, he was pursuing habeas corpus relief in federal court.  He initiated proceedings in this court, at the very earliest, on May 2, 2005, the date he signed the instant petition for writ of habeas corpus.  (Doc. 1).

On December 1, 2005, Painter, proceeding pro se, filed a third PCRA petition. According to the Respondents, in the third petition Painter once again claimed that his sentence was excessive and that he received ineffective assistance of counsel.  On March 24, 2006, Judge McCormick dismissed the third PCRA petition, holding it was: "untimely filed, and raises issues that were previously litigated in prior proceedings."

(Doc. 19 at 2a).  Painter filed an appeal with the Superior Court, which is currently pending at docket number 732 WDA 2006.

**B.     Time Period for Filing Federal Habeas Corpus Petitions**

In their Answer, Respondents contend that Painter's habeas petition must be dismissed because it is untimely under the statute of limitations set forth in The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in relevant part at 28 U.S.C. § 2244(d).  AEDPA–like its state post-collateral counterpart, the PCRA–requires, with a few exceptions not implicated here, that a state prisoner seeking federal habeas corpus relief file a petition in federal district court within one year after his state judgment becomes final.  28 U.S.C. § 2244(d)(1)(A).  As noted above, the state courts determined that Painter's judgment of sentence became final on January 22, 2001.  Accordingly, the one-year period for filing his federal habeas corpus petition ran from January 23, 2001 until January 23, 2002.  His May 2005 federal habeas petition was thus untimely.

A petitioner may rely on two tolling exceptions to argue that AEDPA's one-year period of limitation should be tolled: (1) statutory tolling under 28 U.S.C. § 2244(d)(2); and (2) equitable tolling.  Here, neither tolling exception applies to the petition filed by Painter.

**Statutory Tolling**

AEDPA provides that "properly filed" applications for PCRA relief that are pending during its limitations period will statutorily toll the limitations period.  28 U.S.C. § 2244(d)(2).  Here, Painter filed his first (and only timely) PCRA petition on August 7, 2001.  Thus, the first PCRA petition tolled AEDPA's statute of limitations after 196 days

7

had already expired.  On November 26, 2003, Judge McCormick denied Painter's

petition.  (SCR at 204a-207a).  Painter had 30 days in which to file his appeal to the

Superior Court (or until December 26, 2003).  The PCRA petition is deemed to be

pending during this time even though an appeal was not filed.  See Swartz v. Meyers,

204 F.3d 417, 420 (3d Cir. 2000) (the one-year limitations period continues to be tolled

during the period permitted by state law for the taking of a timely appeal from the denial

of post-conviction relief even if no appeal is taken).  Hence, the first PCRA petition

continued to toll the limitations period through December 26, 2003.  After that date,

AEDPA's limitations period began to run again, and Painter, having approximately 169

days remaining before AEDPA's statute of limitations expired, had until on or about June

12, 2004 to file a timely federal habeas petition with this court.  He did not initiate

proceedings in this court until, at the very earliest, May 2, 2005.  Thus, even with the

benefit of § 2244(d)(2)'s tolling provision, his habeas petition is untimely.

Importantly, Painter's second PCRA petition did not tolled AEDPA's statute of

limitations.  First, he did not file it until August 12, 2004, two months after the expiration

of the limitations period (June 12, 2004).  Moreover, because the state courts determined

that second PCRA petition was untimely filed under state law, the petition does not

qualify as a "properly filed" petition for state post-conviction relief under 28 U.S.C. §

2244(d)(2), and for that additional reason did not toll the AEDPA statute of limitations for

a federal habeas corpus petition.  Pace v. DiGuglielmo, 544 U.S. 408, 413-17 (2005);

Merritt v. Blaine, 326 F.3d 157, 165-66 (3d Cir. 2003).


**Equitable Tolling**

AEDPA's one-year limitations period in § 2244(d) may be equitably tolled:

> Equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair.  Generally, this will occur when the petitioner has in some *extraordinary way* been prevented from asserting his or her rights.   The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims.  Mere excusable neglect is not sufficient.

Miller v. New Jersey State Dept. of Corr., 145 F.3d 616, 618-19 (3d Cir. 1998) (internal citations, quotations, and punctuation omitted) (emphasis added).  See also Lacava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005).

To the extent that Painter argues that Attorney Valaseck's alleged failure to inform him that Judge McCormick denied his first PCRA petition would support a finding that equitable tolling is warranted in this case, that argument is without merit.  Even assuming *arguendo* that Painter's allegation is true, such conduct does not rise to the level of "extraordinary" circumstances necessary to apply equitable tolling.  In non-capital cases, "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."  Fahy v. Horn, 240 F.3d 239, 243 (3d Cir. 2001).  See also Lacava, 398 F.3d at 276-77 (attorney's failure to notify petitioner of the state court's disposition of his case did not rise to the level of an extraordinary circumstance: "We note that LaCava was represented by counsel during his state collateral proceedings, including the filing of his petition for allowance of appeal.  Accordingly, LaCava was not entitled to personal notice of the Pennsylvania Supreme Court's order.  See Pa.R.App.P. 1123(a).  LaCava fares no better by implying that counsel was derelict in failing to timely notify him of the state court's disposition. . . . LaCava advances no allegations of attorney malfeasance that

would elevate this case to an 'extraordinary circumstance' sufficient to warrant equitable tolling."); <u>Schlueter v. Varner</u>, 284 F.3d 69, 76-78 (3d Cir. 2004) (attorney's misconduct did not constitute an extraordinary circumstance where that attorney did not keep his promise to file petitioner's PCRA petition on time and failed to communicate further with petitioner about the status of his petition.); <u>Johnson v. Hendricks</u>, 314 F.3d 159, 162-63 (3d Cir. 2002) (equitable tolling is not warranted where the petitioner relied on erroneous advice from his state public defender that he had one year from the date of denial of post-conviction relief to file his federal habeas petition).  Thus, Painter has not alleged facts sufficient to show that sound legal principles as well as the interests of justice demand pursuit of the sparing doctrine of equitable tolling.

**C.    Legal Analysis**

Even if Painter's claims were not untimely under AEDPA's statute of limitations and this court was required to address each claim on the merits, Painter still would not be entitled to habeas relief.

**1.    Claims 1 and 2:  Sufficiency of the Evidence**

In Claim 1, Painter contends that the Commonwealth's evidence was insufficient to sustain the jury's verdict of guilt on the stalking, harassment, and endangering the welfare of children convictions.  He asserts that, with regard to the incident that occurred on June 26, 1998, there was "no evidence . . . presented that [he] was in the act of following his wife to a laundromat, or testimony [that he acted with] intent to harm her." (Doc. 1 at 7B).  In Claim 2, he contends that the evidence was insufficient to sustain his convictions for simple assault and terrorist threats.  In support, he argues that, during the November 13, 1998 incident, the injuries to his wife's arms occurred when she lunged at

10

him during a "mutual altercation."  (Doc. 1 at 7B).

　　　　To assess a claim that the evidence is constitutionally insufficient to sustain a conviction, the court must consider whether, *viewing the evidence in the light most favorable to the prosecution*, any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The Superior Court of Pennsylvania adjudicated Claims 1 and 2 on the merits on direct appeal and denied them.  (SCR at 149a-155a).  Accordingly, the deferential standard of review set forth in AEDPA and codified at 28 U.S.C. § 2254(d) applies to these claims.  It provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Price v. Vincent, 538 U.S. 634, 641 (2003); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

　　　　In denying relief on Claim 1, the Superior Court held, with regard to the stalking and harassment[4] convictions:

─────────────────────

　　　　　　[4] Section 2709 of the Pennsylvania Crimes Code defines harassment and stalking as follows:

With little elaboration, Mr. Painter merely asserts that there was no testimony that he "made statements or gestures to [Mrs. Painter,]" that he did not follow her to the laundromat, and that there was no evidence demonstrating an intent to cause her substantial emotional distress, alarm, or annoyance.  We disagree. . .

Here, in direct violation of the PFA order, Mr. Painter showed up at daybreak at Mrs. Painter's home just one day after his release from prison.  Mr. Painter received a warning from a police officer shortly thereafter.  Despite the admonition, just hours later Mr. Painter slowly cruised by the laundromat on three separate occasions while stopping to stare at Mrs. Painter.  He later walked directly in front of Mrs. Painter's workplace.  Mr. Painter's intent to harass, annoy, or cause substantial emotional distress was made clear, despite the fact that he made no "statements or gestures" to Mrs. Painter. . . . Mr. Painter showed up at Mrs. Painter's home, was warned by police and, shortly thereafter, repeatedly made his present known.  Our review of the evidence, examined in the light most favorable to the Commonwealth, amply supports Mr. Painter's conviction of harassment and stalking.

(SCR at 152a).

Regarding the conviction for endangering the welfare of his children,[5] the Superior

---

(a) Harassment. – A person commits the crime of harassment when, with intent to harass, annoy or alarm another person:

* * *

(3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy another person and which serve no legitimate purpose.

* * *

(b) Stalking. – a person commits the crime of stalking when he engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrates either of the following:

(1)   an intent to place the person in fear of bodily injury; or

(2)   an intent to cause substantial emotional distress to the person.

18 Pa.Cons.Stat. § 2709(a)(3), (b).

[5]  The Superior Court explained:

[O]ne endangers the welfare of a child if he or she knowingly violates a duty of care, protection or support.  In order to sustain a conviction of this offense

Court held:

> [Painter] does not deny his duty to protect his children, he claims only that "the Commonwealth failed to establish any direct action on [his] part that endangered them."   Contrary to Mr. Painter's claim, the evidence is abundantly clear that he endangered the welfare of his children.  Mr. Painter blatantly threatened both the physical and psychological welfare of his sons when he held them captive while pursuing and attacking their mother with a utility knife and subsequently forced them into a car driven by an injured and extremely distressed Mrs. Painter.  We need not point to further proof of our conclusion that sufficient evidence existed to support Mr. Painter's conviction of endangering the welfare of his children.

(SCR at 153a).

In rejecting Claim 2, the Superior Court determined that the Commonwealth presented sufficient evidence to sustain a conviction of simple assault[6] and making terroristic threats:[7]

> In a rather weak attempt to maintain that the Commonwealth did not meet its burden of proof for simple assault, Mr. Painter merely reiterates his own testimony that the injuries to his wife's arms occurred when *she* lunged at *him* while he was holding the knife.  Mr. Painter is essentially asking this court to re-weigh the evidence presented at trial; we decline his invitation to do so.

---

> the Commonwealth must establish each of the following elements: The accused is aware of his/her duty to protect the child; the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

(SCR at 152(a)).

[6]  To sustain a conviction for simple assault, it must be shown that the defendant "intentionally, knowingly or recklessly cause[d] bodily injury to another[.]" (SCR at 153a (citing 18 PA.CONS.STAT. § 2701(a)(a)).

[7]  To sustain a conviction for making terroristic threats, the Commonwealth must prove that the "defendant make a threat to commit a crime of violence, and . . . the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror."  (SCR at 154a) (citing 18 PA.CONS.STAT. § 2706)).

Credibility determinations are the sole province of the fact-finder.  It is not proper, absent extraordinary circumstances, for an appellate court to impose an alternate version of factual events in substitution for those found in the proceedings below.  Mrs. Painter's testimony, which the fact-finder found credible, revealed that the lacerations to her arms occurred when she was trying to protect herself while [Painter] slashed at her with the knife.  Mr. Painter's intent to cause bodily injury was apparent.

[With regard to terroristic threats,] [a]gain, Mr. Painter only reiterates his testimony that he has no recollection of making any threatening statements to his wife indicating that he would kill her.  Mrs. Painter's testimony is clear, however, that [Painter] did make such a threat.  Once more, we refuse to disturb the credibility determinations of the fact-finder.  Mr. Painter's declaration that his wife would die, accompanied by the fact that he was wielding a knife at the time, most certainly constitutes a threat to commit a violent crime communicated with the intent to terrorize.  Mr. Painter's sufficiency claims are without merit.

(SCR at 153a-155a (internal citations and quotations omitted) (emphasis in original)).

The Superior Court aptly set forth why any rational finder of fact could have found the elements of harassment, stalking, endangering the welfare of children, making terroristic threats, and simple assault.  Essentially, Painter takes issue with the jury's finding that that the Commonwealth's evidence was more convincing than his defense.  As the Superior Court noted, however, it was within the jury's province to credit the evidence as it saw fit.  Moreover, in reviewing this claim, this court must consider the evidence in the light most favorable to the prosecution.  Jackson, 443 U.S. at 319.

In sum, the Superior Court's decision that there was sufficient evidence to support a convictions at issue was not "contrary to" or an "unreasonable application of" "clearly established Federal law," and it did not result "in a decision that was contrary to, or involved an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

## 2.     Claim 3:  Excessive Sentence

In Claim 3, Painter argues that his sentence is excessive because the evidence submitted at trial "does not support a sentence in the top standard of upper range of 7 ½ to 15 years for AGGRAVATED ASSAULT."  (Doc. 1 at 7B).

Sentencing is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir.1984); see also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  Thus, a federal court will not reevaluate a sentence in a habeas proceeding unless it exceeds the statutory limits or violates proscribed federal grounds such as being cruel and unusual or racially or ethnically motivated.  See e.g. Jones v. Superintendent of Rahway State Prison, 725 F.2d 40 (3d Cir.1984); Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir.1984) ("As a general rule, federal courts will not review state sentencing determinations that fall within statutory limits."); Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir.1975) ("This Court will not upset the terms of a sentence within statutory limits unless so disproportionate to the offense as to be completely arbitrary and shocking").

Here, Painter does not dispute that the trial court sentenced him within the statutory limits.  (See SCR at 156a).  Rather, he asserts that he had no intent to harm his wife and the sentence he received was therefore unreasonable.  (Doc. 1 at 7B).  He does not alleged that his sentence violates any federal constitutional rights.  Thus, this claim is not subject to federal review.

### 3.    Claims Raised In the PCRA Proceedings

### Claims 4 and Claims 5(a) and 5(b)

Painter raised Claim 4 and Claims 5(a) and 5(b) in his first PCRA petition.  (See SCR at 204a).  As set forth *supra*, Judge McCormick denied each claim on the merits and Painter did not appeal that decision.  Because he did not file an appeal, he did not exhaust his state-law remedies with regard to these claims.  O'Sullivan v. Boerckel, 526 U.S. 838 (1999) (To comply with the exhaustion requirement, a petitioner must present every claim raised in the federal petition to the state's trial court *and appellate court* before exhaustion will be considered satisfied).

Generally, a district court should require that a state prisoner return to state court for review of unexhausted claims.  See Crews v. Horn, 360 F.3d 146 (3d Cir. 2004).  However, a federal court may excuse a petitioner's failure to exhaust in cases where the federal court can confidently predict that the state courts would not entertain review of the claims because such review would be barred by a state procedural rule, such as a statute of limitations.  Slutzker v. Johnson, 393 F.3d 373, 380 (3d Cir. 2004); Whitney v. Horn, 280 F.3d 240, 249-53 (3d Cir. 2002); Lines v. Larkins, 208 F.3d 153, 162-66 (3d Cir. 2000).  That is the case here.  Judge McCormick has already denied Painter's third PCRA as untimely and unreviewable in the Pennsylvania courts.  See 42 PA.CONS.STAT. § 9545(b)(1).  There is no reason to believe that the Superior Court will not affirm that decision, as it already decided that Painter's second PCRA petition was untimely.  Thus, under the circumstances presented here, exhaustion is considered "futile."  Slutzker, 393 F.3d at 380; Whitney, 280 F.3d at 250; Lines, 208 F.3d at 162.

Importantly, when a petitioner cannot exhaust his claims due to futility, those claims are considered "procedurally defaulted" in federal habeas court.  Id. at 380;

16

Whitney, 280 F.3d at 252; Lines, 208 F.3d at 166.  The procedural default doctrine applies to bar federal habeas review when a state court has declined or would decline "to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."  Id. at 380-81 & 381 n.6 (internal quotation and citation omitted).  "The *raison d'être* for the doctrine lies in the fact that a state judgment based on procedural default rests on independent and adequate state grounds."  Id. at 381 (citations omitted).  When exhaustion is futile because state relief is procedurally barred, federal courts may only reach the merits of a claim if the petitioner can establish "cause" for the default and resulting "prejudice," or establishes a "fundamental miscarriage of justice."  Id.  As discussed *infra*, Painter has failed to established cause and prejudice for his default.

### Claim 5(c)

Painter raised Claim 5(c) in his second PCRA petition.  As noted above, the Superior Court determined that the claims raised in the second PCRA petition were untimely under the PCRA's one-year statute of limitations.  (SCR at 216a-222a).  Because review of this claim was barred by the state courts for failure to comply with a state procedural rule, it too is procedurally defaulted, as the state court's rejection of this claim rests on an independent and adequate state ground.  And, as discussed immediately below, Painter has failed to establish cause and prejudice to overcome his default.

### Claims 4 and Claims 5(a)-(c) are Procedurally Defaulted

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court instructed that a federal court may review the merits of a procedurally defaulted claim if the petitioner

17

establishes "cause" for the default by demonstrating that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule[,]" 501 U.S. at 753, as well as "prejudice," meaning "not merely that errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (internal citation and quotation omitted).

To the extent that Painter would argue that that the "cause" for his procedural default was his prior counsels' failure to raise the claims at issue before the state courts in a proper manner, that argument is without merit.

First, Attorney Jackson represented Painter at trial and on direct appeal.  Under Pennsylvania law, she could not raise her own ineffectiveness on direct appeal.  See e.g. Commonwealth v. Fox, 383 A.2d 199, 200-01 (Pa. 1978).  Therefore, she cannot be found at fault for not raising Claims 5(a)-(c) on direct appeal.  To the extent that Painter would contend that she failed to raise an issue with regard to the trial court's decision to deny the defense's motion to sever (Claim 4), that type of conduct fails to satisfies the "cause" requirement.  As the Third Circuit Court has stated:

> Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim.  *Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default."*  Id. at 486 [ ].

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (emphasis added); see also Lines, 208 F.3d at 166-67.

Additionally, Painter cannot rely on any claim that his PCRA counsel's (either

18

Attorney Valaseck's or Attorney Wigle's) representation during the PCRA proceedings establishes "cause."  To qualify as "cause" for a procedural default, an attorney's ineffectiveness must rise to the level of a Sixth Amendment violation.  Cristin, 281 F.3d at 420 (citing Murray, 477 U.S. at 488).  Because Painter has no Sixth Amendment right to representation during his PCRA proceedings, any alleged ineffectiveness on counsel's part during that proceeding cannot establish cause for the procedural default.  Id. (citing Commonwealth v. Finley, 481 U.S. 551 (1987); Coleman, 510 U.S. at 752).

  For all of the foregoing reasons, Claim 4 and Claims 5(a), (b), and (c) are procedurally defaulted, and the Court may not address it on the merits.

   **4.**  **Obstruction of PCRA Appeal**

  In his final claim for relief, Painter contends that the state courts have obstructed his appeal rights because Judge McCormick denied his first PCRA petition in November 2003 but he allegedly was not notified of that result until May 2004, and because his second PCRA petition was denied in February 2005 and he allegedly did not receive notice until April 2005.  (Doc. 1 at 7c).  This claim is not cognizable in federal habeas corpus review.  Alleged errors in the course of a state's post-conviction process are not cognizable in a federal habeas petition.  See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation. . . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'"); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); Nichols v.

19

Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to [federal] habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotation marks omitted); Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002) ("relief may not be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedure").

**D.      Certificate of Appealability**

AEDPA provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a state court unless a certificate of appealability has been issued.  A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right.  28 U.S.C. 2254(c)(2).  In the case at bar, Painter has not made a showing that he has been denied any of his constitutional rights.  Accordingly, a certificate of appealability should be denied.


**II.    CONCLUSION**

It is respectfully recommended that the petition for writ of habeas corpus be denied and that a certificate of appealability be denied.  In accordance with the Magistrates Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.

20

Failure to file timely objections may constitute a waiver of any appellate rights.


                                          <u>/s/Lisa Pupo Lenihan</u>
                                            Lisa Pupo Lenihan

Dated: July 18, 2006                     UNITED STATES MAGISTRATE JUDGE



cc:      The Honorable Joy Flowers Conti

           Heidi D. Norton
           O'Brien & Ryan
           Hickory Pointe
           Suite 300
           Plymouth Meeting, PA 19462

           Leo J. Ciaramitaro
           Westmoreland County District Attorney's Office
           lciarami@co.westmoreland.pa.us

           Tracy Painter
           DY-7538
           SCI Fayette
           Box 9999
           LaBelle, PA 15450-0999